WALL PRODUCTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10277.   Promulgated July 20, 1948.

*Robert Strange, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

**OPINION.**

HILL, *Judge*: The first issue involves petitioner's claim that it has the right under section 23 (a) (1) (A) of the Internal Revenue Code [1] to deduct from its gross income the payments made to Strange and Kastner for the use of their secret formula. The respondent contends that Strange and Kastner possessed no secret formula and, therefore, that they conveyed no property right to petitioner which could be the basis for payments of royalties. The evidence convinces us that they had such a formula during 1942 and 1943.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

    (a) EXPENSES.—

    (1) TRADE OR BUSINESS EXPENSE.—

    (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including  * * *  rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property  * * *.

In Nimms, Unfair Competition and Trade Marks, 3d Ed. (1929), relied upon by respondent, it is stated in section 141:

* * * A secret may be property, just as land is property; for money and other value is often given in return for learning it. It somewhat resembles the property one has in an unpublished manuscript. The right to have exclusive knowledge of foreign financial news for fifteen minutes after its receipt by the Associated Press has been held property; so also the knowledge of secret processes of manufacture and formulae for making various articles. * * *

In Derenberg, Trademark Protection and Unfair Trading (1936), pp. 118 and 119, as quoted by respondent, it is stated:

*Trade secrets were recognized as property rights at a comparatively early date by the Courts.* Closer observation shows, however, that in most cases of this kind, even where the decision was based on the assumption of such a right, another concept of equity in fact turned the scales: the trust. That this consideration is paramount is at once obvious when it is recalled that the secret process or formula or whatever else the secret may consist of, ceases to be treated as a "property right" as soon as a third party, through his own efforts or investigation or through any other fair means obtains knowledge of the other's secret. [Emphasis supplied.]

Respondent contends that Strange and Kastner had no property interest in the formula. He points out that Kastner admitted the formula is simple and that a competent chemist could break Klearcure down into its constituent parts. He further states that the Army approved two other concrete-curing products which performed equally as well as Klearcure. There is no proof in the record, however, that those products were derived from the same formula as Klearcure, or that they consisted of the same material. So far as the evidence is concerned, at least through the years in question, the formula was secret. The property right of Strange and Kastner in the formula is not negatived by the fact that they had not applied for a patent. Respondent's argument on this point, therefore, is without merit.

Respondent cites two cases in support of his position. The first of these, *Peterson & Pegau Baking Co.*, 2 B. T. A. 637, concerned payments made by a taxpayer to its two principal shareholders for the use of an alleged secret process for baking bread. In rejecting the taxpayer's contention, we stated at page 639:

* * * We are not convinced *that he is in possession of any particular method* which could be the subject of a secret process for monopolistic use by either himself or the taxpayer. [Emphasis supplied.]

In other words, in that case the taxpayer did not prove the existence of a secret formula. In the instant case, on the other hand, petitioner has shown and we have found that such a secret formula did exist. In the second case, *L. Schepp Co.*, 25 B. T. A. 419, we held that the idea of selling coconut to the retail trade in a container—a mere method of distribution—could not be the basis for the payment of

royalties. The secret formula here, however, is property and is a proper basis for the payments made.

There is no question of shop rights involved here, for Kastner was never employed by petitioner to develop the formula, nor did he use any of its facilities in his experiments.

Hence, in accordance with the authorities above cited, as we have found Kastner and Strange owned a secret formula for Klearcure, petitioner is entitled to deduct as an ordinary and necessary expense the payments made to them for its use.

The second issue relates to petitioner's claim that the salaries of $6,700 and $5,500 paid to Kaye McNamara in the years 1942 and 1943, respectively, were reasonable compensation and therefore deductible from its gross income. The respondent urges that such compensation was unreasonable, and supports his argument by pointing out that the board of directors considered a salary of $5,000 per year for her services was reasonable in 1942 and that she was paid only $3,500 in the years 1944, 1945, and 1946. From the evidence, we believe the salaries paid to Kaye during 1942 and 1943 were reasonable. The amounts thereof were arrived at in arms' length negotiations and appear to have been necessary in order to retain in those years a character of service badly needed, if not indispensable.

Strange was the only member of the board of directors who maintained that $5,000 was a reasonable salary for Kaye's services. Of the other two members, Kastner indicated his belief that Kaye's demands should be met by threatening to resign if a satisfactory arrangement with respect to her wages could not be made. And, of course, the remaining member, Kaye, was in favor of voting a substantial raise for herself. It is true that Kaye's wages were reduced in the three years immediately following 1943. However, petitioner's business declined considerably in those years and it is reasonable to assume, we believe, that her duties likewise decreased.

It is true that where, as here, payments are to a shareholder, the proof must show that the directors were not disguising distributions of profit in the form of salary. See *L. Schepp Co.*, *supra*. The evidence, as above noted, shows that both in 1942 and 1943 there was sharp disagreement among Strange, Kastner, and Kaye concerning the latter's salary for those years. In fact, the conflict concerning her compensation became so prolonged and so detrimental to petitioner's operations that it was found necessary to call in an arbitrator to work out a compromise. These facts, we think, negative any argument that the board's agreement to increase Kaye's wages during 1942 and 1943 was an attempt to distribute profits in the guise of wages.

The record shows that during the years in question she took care of all the billing, performed collection duties, did the bookkeeping and correspondence work, was in charge of traffic, and ordered the

materials needed for the manufacture of Klearcure and other products. Her duties were much increased over previous years because of the greater volume of business transacted by petitioner during 1942 and 1943. Due to her knowledge of where to buy materials, gained from her long experience in this work, she was particularly valuable during 1942 and 1943, when she was able to purchase for petitioner certain scarce materials required for the manufacture of its products.

Accordingly, we hold that petitioner may deduct from its gross income the full amount of the salaries paid to Kaye during each of the involved taxable years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, dissenting: In my opinion the facts in this case are not such as to justify the conclusion that petitioner's two stockholders, Strange and Kastner, were the owners of a *secret* formula used by petitioner which would supply a basis for the deduction under section 23 (a) (1) (A) of the Internal Revenue Code of amounts paid to them by petitioner as payments for use of a secret formula. In my judgment the payments in question were nothing more than a distribution by petitioner of corporate profits to its principal stockholders.